UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE ENGLISH, JR.,   ) | CASE NO. 1:11CV2794 |
| ) | |
| Plaintiff,   ) | JUDGE JOHN R. ADAMS |
| ) | |
| -vs-   ) | |
| ) | MEMORANDUM OF OPINION |
| COMMISSIONER   ) | AND ORDER |
| OF SOCIAL SECURITY   ) | |
| ) | |
| Defendant.   ) | |

On July 2, 2012, Attorney Kirk Roose filed a motion for attorney fees for Plaintiff George English under the Equal Access to Justice Act ("EAJA").  On July 30, 2012, Plaintiff and the Commissioner filed a proposed stipulation that would resolve the motion for EAJA fees.  The Court's review of the motion and proposed stipulation raised concerns about the amount sought.  Accordingly, the matter was set for hearing and the hearing was conducted on August 16, 2012.  Both parties were afforded the opportunity to be heard, and the Court allowed for post-hearing briefing on issues that were highlighted by the Court.  The Court has received and reviewed Attorney Roose's post-hearing briefing.  The parties' stipulation is REJECTED.  The motion for attorney fees is GRANTED IN PART AND DENIED IN PART as detailed herein.

I.     INTRODUCTION

The Sixth Circuit has recently explained the history of EAJA as follows:

The EAJA, enacted in 1980, provides for an award of attorney fees to a party prevailing against the United States in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees. 28 U.S.C. § 2412(d)(1)(A); *see also Perket v. Sec. of*

*H.H.S.*, 905 F.2d 129, 132 (6th Cir. 1990). The purpose of the statute is described in its legislative history:

> The [EAJA] rests on the premise that certain individuals ... may be deterred from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified.

> H.R.Rep. No. 96-1418, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984. This statement indicates that Congress intended to make challenges to unreasonable government action more accessible for certain individuals by allowing them to recoup reasonable attorney fees and costs, should they prevail.

*Bryant v. Commissioner*, 578 F.3d 443, 445-46 (6th Cir. 2009).

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *cf. Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990) ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*." )  As such, this Court must excluded hours that were not "reasonable expended." *Hensley*, 461 U.S. at 434.  Counsel, therefore, must make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Id.*

Furthermore, under EAJA, the amount of attorney fees awarded:

shall be based upon the prevailing market rates for the kind and quality of services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support any requested increase in the hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984) (considering attorney fees under § 1988, the Court stated, "[t]he burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant"). Plaintiffs must "produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. at 895 n. 11.

## II. LEGAL ANALYSIS

### A. Stipulation

Initially, the Court rejects the parties' stipulation of an award of attorney fees in the amount of $5,100. The Court acknowledges the strong public policy in favor of settlements. However, as detailed above, only reasonable attorney fees may be awarded by the Court. As will be demonstrated below, the parties' stipulation allows for an award of fees that is outside the realm of reasonable. Accordingly, it must be rejected.

### B. Eligibility

In the instant matter, the Government does not dispute that Plaintiff is eligible for an award of fees. The Government filed its unopposed motion to remand this matter under sentence four of 42 U.S.C. § 405(g) on May 30, 2012. Furthermore, as noted above, the Government stipulated to an award of EAJA fees. As such, the Government has conceded that its position was not substantially justified. Therefore, the Court will now proceed to review the reasonable of Plaintiff's fee request.

### C. Reasonable Number of Hours

The fee application seeks an award of fees to Attorney Roose for 17.1 hours of time, including 15.2 hours devoted solely to preparing this fee application. In addition, Plaintiff seeks fees for 14.2 hours of services performed by Attorney Eric Schnaufer. These hours were devoted primarily to preparing Plaintiff's opening brief. Both attorneys seek compensation at an hourly rate of $184.75.[1] Finally, the application seeks $40 per hour for 2.7 hours of work performed by "appellate assistant" Diane Shriver.

#### 1. Shriver's activities

In evaluating the application for fees for Shriver, the Court is mindful of the following:

> Purely clerical or secretarial tasks, that is, non-legal work, should not be billed—even at a paralegal rate—regardless of who performs the work. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989). For example, dictation and typing are non-compensable, as they are part of the overhead of any law office. *See Wiegand v. Sullivan*, 900 F.2d 261 (Table), 1990 WL 51387, at *1 (6th Cir. 1990) (affirming the district court's reduction of fees). However, activities such as filing a complaint, filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently "legal work" to permit compensation, although any compensation would be at a lesser rate. *See Taylor v. Barnhart*, No. 00 c 7782, 2002 WL 31654944 at *4 (N.D.Ill. Nov.22, 2002). *But see Knudsen v. Barnhart*, 360 F.Supp.2d 963, 977 (N.D.Iowa 2004) (finding that retrieving documents, filing documents, serving summonses, and calendaring are non-compensable because they are properly considered overhead costs); *Barriger v. Bowen*, 673 F.Supp. 1167, 1170 (N.D.N.Y.1987) (finding that mailing two letters and serving the Assistant United States Attorney with a copy of a summons and complaint are non-compensable because they are properly considered overhead costs).

*Rodriguez v. Commissioner*, 2012 WL 2905928, at *3 (N.D.Ohio July 16, 2012). In the instant matter, Shriver's activities are as follows:

> .2 hours for completing the in forma pauperis application and mailing it to Plaintiff

> 1 hour for preparing and filing the complaint

---

[1] The Court will analyze below the proper hourly rate.

> .5 hours for reviewing Court emails, faxing the agency information, and filing notice with the Court of that fact
>
> .8 hours for reviewing further emails from the Court
>
> .2 hours for filing Plaintiff's brief

The Court finds that "reviewing" Court emails is noncompensable. Based upon the Court's knowledge, these emails are electronic notices of Court filings. Monitoring these emails should be subsumed within overhead costs and therefore is not compensable. The Court finds that the remaining 1.9 hours include filing the complaint, filing a notice with the Court, and filing Plaintiff's brief are properly categorized as legal work. Therefore, 1.9 hours Shriver's activities are compensable. Neither party has presented argument about the proper hourly rate for Shriver. Given the limited number of hours compensable, the Court finds that her $40 per hour rate is reasonable.

   **2. Attorney Schnaufer's Activities**

Attorney Schnaufer seeks compensation for 14.2 total hours. 13.9 hours of his time was devoted to drafting Plaintiff's brief and communicating with Attorney Roose about the brief. The final .3 hours seek compensation for compiling his time record. The Court finds that Attorney Schnaufer's hours are reasonable. As a result of his work, Attorney Schnaufer completed a 19-page brief, arguing 5 distinct errors in the administrative law judge's decision. The brief was written well enough to convince the Commissioner to move to remand the matter for further proceedings. Accordingly, the Court finds that the number of hours expended on the brief falls well within the reasonable number of hours the Court would expect for a brief of its quality and length. Moreover, the Court finds that Attorney Schnaufer's .3 hours is likewise reasonable for contemporaneously tracking his time spent on the matter, including ten separate time entries. Accordingly, all of Attorney Schnaufer's time is compensable under EAJA.

### 3. Attorney Roose's Activities

Attorney Roose seeks compensation for 17.1 hours of time. Attorney Roose spent 1.9 hours doing a client intake interview, reviewing the pleadings, and conferring with the Commissioner regarding remand. Attorney Roose then spent 15.2 hours research and drafting his request for attorney fees. Within his request, Attorney Roose asserts: "Most of the services by Attorney Roose were researching and preparing legal support for this application and its attachments, due to new points raised by the agency in its opposition to recent EAJA applications." Doc. 16 at 3.

The total award initially sought in the motion was $5,890.68. Of that total, Attorney Roose sought $2,808.20 for researching and drafting the fee application. In other terms, roughly 47.5% of the fee request was generated from the *fee request itself*.[2] It was this fact that prompted the Court to schedule the matter for a hearing despite the parties' proposed stipulation.

During the initial portion of the hearing, the Court inquired of Attorney Roose about his application. Specifically, the Court sought to learn whether Attorney Roose had ever raised the arguments contained in his application on a prior occasion. Attorney Roose indicated that "there is a little bit of cut and paste" from a prior application. He later stated that he was "not sure whether 40 percent, 50 percent, 60 percent was new." In his supplemental brief, Attorney Roose attempts to assert that 60 percent of his brief was previously created and that 40 percent is new work product.

Prior to the hearing, the Court reviewed numerous EAJA fee applications filed by Attorney Roose since the beginning of May of 2012. The instant application was filed on July 2, 2012. In the two weeks prior to this application, Attorney Roose filed an application for fees in

---

[2] The Court readily acknowledges that preparing the fee application is compensable under EAJA. *See Jean*, 496 U.S. 154. However, it was the **amount** sought for such an action that prompted a closer review by the Court.

*Ratliff v. Commissioner*, 5:11CV2407 (Doc. 20 filed on 6/18/12) and a reply brief in support of an application in *Elson v. Commissioner*, 3:11CV183 (Doc. 21 filed on 6/25/12). Comparing *solely* those two filings to the application herein reveals startling results. The application herein has 418 lines of substantive text. 270 of those lines are **directly copied and pasted** from the prior filings of Attorney Roose. In other words, 64.6% of the application here was copied **verbatim** from prior filings made by Attorney Roose. Attached to this order is a highlighted version of the application, indicating all of the work product that was copied from previously submitted pleadings in other matters.

The Court also reviewed the public docket in this district to determine whether Attorney Roose had raised a similar argument in other matters since early May of 2012. The Court's review produced a staggering number of hours devoted solely to the issue of counsel's hourly rate. The following chart indicates filings from the past four months that include arguments regarding counsel's hourly rate.

| Case # | Plaintiff | Filing Date | Document | Hours |
|---|---|---|---|---|
| 5:11CV2407 | Ratliff | 06/18/2012 | Application | 19.7 |
| 1:10CV2936 | Jaworski | 5/23/12 & 6/22/12 | Reply & Reconsider | 22.7 |
| 1:11CV553 | Gonzalez-Sanchez | 05/29/2012 | Reply | 10.3 |
| 1:12Cv293 | Taylor | 07/05/2012 & 8/10/12 | Reply & Objection | 24.5 |
| 3:10Cv2671 | Gonzalez | 05/01/2012 | Reply | 4.7 |
| 3:11CV150 | Baker-Wells | 08/13/2012 | Reply | 8.8 |
| 3:11CV177 | Vasquez | 05/25/2012 | Reply | 3.9 |
| 3:11CV183 | Elson | 06/25/2012 | Reply | 8.3 |
| 3:11CV398 | Rodriguez | 05/28/2012 | Reply | 9.3 |
| 1:10CV2568 | Jones | 07/30/2012 | Reply | 34.2 |
| 1:11CV2794 | English | 07/02/2012 | Application | 15.2 |

A review of the above-reference filings reveal that they total 220 pages of argument compiled by Attorney Roose. Roughly 213 pages of those pleadings, or 96.8%, are dedicated to arguments about counsel's hourly rate. In total, Attorney Roose has sought compensation for 161.6 hours for all of the above work. Pro-rating those hours for solely those pages of argument regarding the hourly rate leads to a request for compensation for 156.45 hours of time for this issue. Those hours do not include 7.8 hours that Attorney Roose claims to have expended but wrote off as duplicative of work performed in a substantially similar manner. At Attorney Roose's current proposed hourly rate of over $180 per hour, he would be compensated nearly $29,000 for his arguments about his hourly rate. At the lower $125 hourly rate proposed by the Commissioner, Attorney Roose would still receive just under $20,000 for his work.

The Court readily acknowledges that Attorney Roose's argument has evolved as necessary to respond to arguments from the Commissioner and decisions from members of this Court. In that regard, it is clear that Attorney Roose has slowly built from a five-page argument to the lengthier argument presented before this Court. However, the hours sought by Attorney Roose amply demonstrate that he continues to submit time sheets as though the issue being argued is novel in *every* case.

In the instant matter, the bulk of the "new" argument raised by Attorney Roose is not new at all. Instead, it is further analysis of *Bryant v. Commissioner*, 578 F.3d 443 (6th Cir. 2009) and *Mathews-Sheets v. Commissioner*, 653 F.3d 560 (6th Cir. 2011). A review of Attorney Roose's prior briefs indicated that he had already thoroughly reviewed and analyzed these cases and their holdings. Thus, it defies logic that he spent another 15 hours to simply expand his arguments on these two cases.

The path that Attorney Roose chose to take is also particularly troubling to the Court. During the hearing, Attorney Roose indicated that he was unsure whether he had discussed a stipulation for his EAJA fees. Subsequent briefing has revealed that when the topic was raised, the agency counsel indicated to Attorney Roose that he needed to contact a different office to further pursue the matter. More specifically, Attorney Roose emailed agency counsel on May 29, 2012 and asked "Can we settle this EAJA before I have to put time into an application?" Doc. 27-1 at 1-2. On May 31, 2012 at 6:18 a.m., agency counsel indicated a willingness to settle the EAJA fees at the hours and hourly rate proposed by Attorney Roose. However, at 1:12 p.m. that same day, agency counsel followed up and indicated that he lacked the authority to settle the EAJA matter. In that same email, agency counsel indicated that Attorney Roose needed to contact counsel in the Chicago office to pursue his EAJA issue. Attorney Roose declined to do so. In fact, Attorney Roose waited until June 29, 2012, three days before his motion was due, and indicated that he had not received any response from agency counsel.

Rather than properly follow up, Attorney Roose chose instead to raise arguments in "anticipation" of an opposition of his fee request. When asked why he chose to argue and bill first, rather than seek a stipulation, Attorney Roose suggested that prior encounters indicated an unwillingness of the Commissioner to stipulate to the fees. This is particularly troubling given Attorney Roose's own emails with agency counsel that indicate a willingness in this very case to settle the issue. The fact that Attorney Roose chose to ignore the suggestion to follow up with proper agency counsel is particularly troubling giving the background of the matter  -- this background includes an agreement to remand *and* an initial agreement on the total amount of EAJA fees.

Attorney Roose's conduct concerns the Court for numerous reasons. First, the Commissioner did in fact enter into a stipulation for fees in this matter. Thus, any assertions that the Commission is or was unwilling to attempt to resolve the matter run counter to the facts presented herein. This agreement was the second time in this matter that agency counsel had expressed a willingness to resolve the matter. Second, the Court finds it inherently unreasonable that an attorney would seek "fees for fees" equaling nearly half of his overall fee request without making any *meaningful* effort to see if the fee application was necessary *at all.* Rather, a reasonable attorney would first seek out a resolution with the Commissioner and following that discussion, file solely the application that is necessary.

In addition, the Court also finds Attorney Roose's arguments regarding the time spent on this issue to be unavailing. "Counsel combined, rearranged, and customized prior work product for about 60 percent of the text of 14-page hourly-rate argument, as counsel estimated at the hearing." Doc. 27 at 3. A review of the attached and highlighted petition reveals that Attorney Roose did little other than cut and paste from prior filings. Thus, his claim that he "rearranged and customized" this petition is more than a bit disingenuous. The supplemental brief is also internally inconsistent. It reads in part as follows: "These e-mails establish that the undersigned attempted in good faith to settle, and even thought that the matter was settled. The circumstances indicated that the agency was unwilling to settle the hourly rate question." Doc. 27 at 3. The Court cannot understand how the initial response from agency counsel, "I'm fine with your hours and your hourly rate," could possibly lead Attorney Roose to believe that "the agency was unwilling to settle the hourly rate" issue. Rather, the facts plainly indicate a willingness to work through the matter *prior* to an application.

There are also several issues that Attorney Roose has never sought to explain. For example, Attorney Roose has never explained why he should be compensated at all for cutting and pasting from old work product. If he simply sought to raise the precise arguments he had previously utilized, there is no reason he could not have incorporated those arguments by reference. Given his ethical responsibility to keep contemporaneous time records, preparing an application that incorporated by reference these prior arguments would have required almost no time at all for someone who routinely prepares these documents.

Based upon all of the above, the Court finds that the entirety of the time spent by Attorney Roose on his fee application is non-compensable. The hours sought are unreasonable and certainly appear to be hours that were devoted to other matters and work product that was simply regurgitated herein. Moreover, as discussed above, the far more reasonable approach would have been to meaningfully attempt to settle this matter. If that failed, Attorney Roose could certainly have incorporated by reference the arguments made in all his prior applications from the prior three months. Moreover, Attorney Roose could ultimately appeal an adverse ruling on the issue and settle the matter once and for all in this Circuit. Instead, Attorney Roose chose to abandon his effort to settle the matter. He then chose to allegedly spend an excessive number of hours regurgitating arguments made in other matters in this district within weeks of his application herein. Finally, the Court has seen no appeal from Attorney Roose nor seen any indication that he has any intention of appealing the issue. Instead, he appears content to continue to submit billing for presenting the same issue over and again. As such, Attorney Roose shall be compensated solely for the 1.9 hours of work on the substantive portion of this case.

**D. <u>Hourly Rate</u>**

Finally, the Court must examine the issue that Attorney Roose has allegedly spent over 150 hours researching and briefing in approximately a dozen cases within this District. The Court must determine the properly hourly rate for the work performed by the attorneys herein.

As detailed above, Plaintiff argues extensively about the impact of *Bryant* and challenges the interpretation of that case by the Commissioner in other matters. However, *Bryant* clearly held as follows: "In fact, in both cases, Plaintiffs submitted only the Department of Labor's Consumer Price Index, arguing that the rate of inflation supported an increase in fees. *This is not enough*, and the district court did not abuse its discretion in denying Plaintiffs' requests." *Bryant*, 578 F.3d at 450 (emphasis added). In the instant matter, it is clear that Plaintiff did not solely rely upon the CPI in support of his request. Accordingly, while *Bryant*'s holding may assist the Court in some manner, it offers very little to aid the Court's analysis because of the significantly larger quantity of evidence produced by Plaintiff in this matter.[3]

Plaintiff also challenges the holding in an out-of-Circuit case, *Mathews-Sheets*. In *Mathews-Sheets*, the Seventh Circuit noted as follows:

> The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour. For that matter it doesn't authorize an award of $125 per hour, or even $125 plus inflation. The $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor. *Floroiu v. Gonzales*, 498 F.3d 746, 749 (7th Cir. 2007) (per curiam); *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004); *Healey v. Leavitt*, 485 F.3d 63, 68–71 (2d Cir. 2007). If he points to inflation he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an entitlement to an inflation adjustment; the lawyer seeking such an adjustment must show that

---

[3] The fact that Plaintiff submitted substantially more information than the Plaintiffs in *Bryant* only serves to highlight that the significant number of hours spent on analyzing *Bryant* was unreasonable.

>inflation has increased the cost of providing adequate legal service to a person seeking relief against the government. *Bryant v. Commissioner of Social Security*, 578 F.3d 443, 450 (6th Cir. 2009); *May v. Sullivan*, 936 F.2d 176, 178 (4th Cir. 1991) (per curiam); *Headlee v. Bowen*, 869 F.2d 548, 552 (10th Cir. 1989); *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988); *but cf. Johnson v. Sullivan*, 919 F.2d 503, 505 (8th Cir. 1990) (intimating a presumption in favor of a cost of living adjustment).

*Mathews-Sheets*, 653 F.3d at 563.  The Seventh Circuit then went on to clarify its discussion:

>It might seem that because the cost of living special factor is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case. But that is not correct. Inflation might have an impact across a range of fields of practice that would make it difficult to hire a competent lawyer even in a rather routine case in a field of law by no means esoteric; in such a situation a fee above the statutory fee might well be justified. When inflation is not a factor, the lawyer does have to show that there is something special about the particular type of case that justifies the higher fee. That special factor has not been invoked in this case.

>And so on remand the plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to $170 per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.

*Id*. at 565.  This final paragraph, however, has certainly not been universally accepted:

>With all due respect to Judge Posner's analysis in *Matthews–Sheets*, no Court within the Sixth Circuit has required proof that no competent attorney exists in the [immediate geographical] area to handle a plaintiff's case at the statutory rate, in order to prove entitlement to a rate increase. Proving a negative is always difficult, but proving the negative proposition as phrased by Defendant suggests a nearly impossibly high bar for recovery of an award in excess of the statutory rate. Reference to two social security attorneys in just two cases, absent any evidence that those cases were similar in difficulty or that the attorneys involved had equal reputations, skill sets, and experience, is not grounds for reduction of the claimed fee so long as Plaintiff has otherwise carried his or her burden to exceed the statutory rate.

*Russell ex rel. Roach v. Astrue*, 2012 WL 1902550, at *2 (S.D.Ohio Apr. 11, 2012).

In performing its analysis, the Court is mindful that the statutory language that allows for an increase in the hourly rate under EAJA is written in the disjunctive.  That is to say, a cost of

living increase may warrant an upward adjustment **or** a special factor such as a lack of qualified attorneys may warrant such an adjustment. *See Gonzalez v. Astrue*, 2012 WL 1633937, at *2 (S.D.Ind. May 9, 2012) ("Although a sentence can be plucked out of the opinion in *Mathews–Sheets* to support this argument [that the two prongs merge], the Commissioner has conflated the two separate bases under the EAJA that justify a rate higher than the $125 cap.").

Similar to the plaintiff in *Mathews-Sheets*, Plaintiff does not seek an increase in the hourly rate for a special factor. Instead, Plaintiff seeks an increase based upon inflation. The members of this district appear to be in disagreement about what quantum of evidence is sufficient to warrant an increase. *See Keyes v. Commissioner*, Case No. 1:11CV312, Doc. 28 (denying an increase in fees upon finding that Plaintiff had not demonstrated that prevailing rate exceeded the statutory cap); *but also see Hakkarainen v. Commissioner*, Case No. 1:10CV2463, Doc. 45 (Report and Recommendation) (concluding that more than sufficient evidence was presented to justify the increased hourly rate).

In order to demonstrate the prevailing market rate, Plaintiff provided "The Survey of Law Office Economics, 2011 Edition," counsels' resumes, and the national CPI for legal services. A colleague on this Court recently found such materials to be sufficient to warrant an increase. "The Court finds that Jaworski's additional evidence is sufficient to support a cost-of-living increase, as it demonstrates that: (1) increases in law firm expenses in the relevant time frame have outpaced cost-of-living increases, and (2) that the requested fee is less than or equal to both the average and median rates in Ohio with respect to administrative law practice." *Jaworski v. Commissioner*, 1:10CV2936, Doc. 32. This Court, however, need not resolve that ultimate issue herein.

Assuming *arguendo* that Plaintiff has supplied sufficient evidence to meet the burden described in *Bryant*, this Court still retains the discretion to ultimately determine the reasonable fees that should be awarded. Herein, the Court expressly declines to exercise its discretion to increase the hourly rate beyond $125 per hour.

The Court refuses to increase the hourly rate for several reasons. First, Attorney Roose has submitted fee applications for over 150 hours for his alleged research on this hourly rate issue. At some point in time, a message must be sent that counsel may not simply spend the Government's money by repeatedly billing for substantially the same work. Furthermore, Attorney Roose was less than forthright when asked about the content of his application. Initially, Attorney Roose indicated that "there is a little bit of cut and paste" in his application from a prior application. A little later, Attorney Roose indicated that he was not certain whether "40 percent, 50 percent, [or] 60 percent was new." Still later, the Court inquired: "If I go back and look at your other cases, am I going to find that this brief is something that is almost verbatim from other briefs you've submitted?" Attorney Roose responded, "No, Your Honor, you won't find that there is verbatim from another brief." In reality, nearly 65% of the application was copied *verbatim* from applications and pleadings filed within 2 weeks of this application.

Given 1) counsel's evasiveness when answering direct questions about his time, 2) counsel's failure to meaningfully attempt to agree to a stipulation of fees, 3) and counsel's repeated billing in this and other matters for substantially similar work product, the Court invokes its discretion and finds that $125 per hour is appropriate for the work performed by counsel in this matter.

### III.    CONCLUSION

Plaintiff's motion for EAJA fees is GRANTED IN PART AND DENIED IN PART. Appellate assistance Shriver's 1.9 hours at $40 results in $76.  The Court finds that 16.1 hours of attorney time is compensable at $125 per hour for a total of $2012.50.  Accordingly, the motion is GRANTED IN PART and the total award of fees is $2,088.50.  Consistent with Plaintiff's request, the amount shall be made in Plaintiff's name so that any pre-existing debt to the Government may be offset before any amount is assigned to counsel.

IT IS SO ORDERED.


Dated:  August 31, 2012                         */s/ John R. Adams*_____
                                                JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE